IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DERRICK SEWELL, | § | |
| | § | No. 317, 2014 |
| Defendant Below- | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware in and |
| v. | § | for Sussex County |
| | § | |
| STATE OF DELAWARE, | § | No. 1305008035 |
| | § | |
| Plaintiff Below- | § | |
| Appellee. | § | |

Submitted: September 30, 2015
Decided: November 25, 2015

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices.

### ORDER

On this 25th day of November 2015, it appears to the Court that:

(1) Defendant-Below/Appellant Derrick Sewell ("Sewell") appeals from a Superior Court jury verdict finding him guilty of Assault in the First Degree,[1] Possession of a Deadly Weapon During the Commission of a Felony ("PDWDCF"),[2] Possession of a Firearm by a Person Prohibited ("PFBPP"),[3] Aggravated Menacing,[4] Conspiracy Second Degree,[5] Offensive Touching,[6] Receiving a Stolen Firearm,[7] and

---

[1] 11 *Del. C.* § 613(a)(1).
[2] 11 *Del. C.* § 1447.
[3] 11 *Del. C.* § 1448.
[4] 11 *Del. C.* § 602(b).
[5] 11 *Del. C.* § 512.
[6] 11 *Del. C.* § 601.
[7] 11 *Del. C.* § 1450.

Possession of a Firearm during the Commission of a Felony ("PFDCF").[8] Sewell raises three claims on appeal. First, Sewell contends that Delaware's Habitual Offender Statute does not apply to felony traffic offenses. Second, Sewell contends that the State's failure to disclose certain evidence violated Superior Court Criminal Rule 16. Third, Sewell contends that he was prejudiced by the State's failure to file a motion to declare Sewell an habitual offender before the final case review. We find no merit to Sewell's appeal and affirm.

(2) On the evening of May 10, 2013, a birthday party was being held at a residence on Duffy Street in West Rehoboth. While Aleshia Boyer was out front of the residence, she was confronted by Sewell, Rakeem Conquest, and Precious Tiggs due to an earlier altercation between Boyer and Conquest's girlfriend, Jessica Partin. After Boyer shouted to the other partygoers for help, Howard Whaley, Jeremy Ricketts, and Marvin Burton came around from the side of the house.

(3) The altercation quickly escalated. Sewell punched Whaley in the face. Whaley responded by chasing Sewell around a car. In an attempt to stop him, Conquest pulled out a nine millimeter Ruger (the "Ruger") and tried to hit Whaley, but Whaley knocked the Ruger out of Conquest's hand. Sewell then yelled to Tiggs to hand him another gun (the "Sig Sauer"). Tiggs complied, and Sewell proceeded

---

[8] 11 *Del. C.* § 1447A.

2

to shoot Howard in his right knee. Sewell, Conquest, and Tiggs fled without recovering the Ruger that had been knocked out of Conquest's hand.

(4) That same night Conquest was apprehended by the police after he was spotted riding in a car with Partin. After placing Conquest in custody, the police found the Sig Sauer as well as a twenty-two caliber revolver in the car. Sewell was apprehended four days later while riding in a car with Aliquisha Conquest, Conquest's sister.

(5) As part of their investigation, the police confirmed that the Ruger left at the scene of the crime had been stolen on May 9, 2013 and sold to Sewell and Conquest that same day. Further, the police confirmed that a spent casing recovered from the scene of the shooting was from the Sig Sauer. Sewell was subsequently indicted.

(6) In June 2013, Sewell filed a request for discovery. The State provided certain federal investigation reports (the "Federal Reports") relating to the stolen Ruger. Further, the State provided the identity of its forensic expert, Karl Rone, as well as the results of his examination of the Sig Sauer.

(7) Trial was held in April 2014. During trial, Sewell complained about the State's untimely disclosure of certain information. Specifically, Sewell complained about two additional pages of the Federal Reports, notes of Detective Kelly, documents relating to the State's forensic report, and the police report of Officer

3

Stetzer who initiated the traffic stop that resulted in Sewell's arrest. Based on these alleged untimely disclosures, Sewell moved for a mistrial several times. All of his motions were denied.

(8) The jury found Sewell guilty of the charges mentioned above. The State then filed a motion to declare Sewell an habitual offender, which Sewell opposed on the basis that his previous felony convictions were Title 21 felonies. He argued that Title 21 felonies did not qualify as prior felonies under the habitual offender statute. The trial court rejected Sewell's contention and sentenced him to eighty-one years of incarceration as an habitual offender. This appeal followed.

(9) "We review statutory construction issues *de novo* to determine if the Superior Court erred as a matter of law in formulating or applying legal precepts."[9] "We review a trial judge's application of the Superior Court Rules relating to discovery for an abuse of discretion."[10]

(10) First, Sewell claims that it was error to declare him an habitual Offender under 11 *Del. C.* § 4214(a) because the previous offenses were Title 21 felonies. This Court held in *Wickkiser v. State*,[11] that "Section 4214(a) does not exclude Title 21 felonies as qualifying felonies."[12] The trial court acted properly when it found Sewell

---

[9] *Snyder v. Andrews*, 708 A.2d 237, 241 (Del. 1998).
[10] *Oliver v. State*, 60 A.3d 1093, 1095 (Del. 2013).
[11] *Wickkiser v. State*, 2014 WL 1258306, at *1 (Del. 2014).
[12] *Id.*

was an habitual offender. Thus, Sewell's first claim has no merit.

(11) Next, Sewell claims that certain disclosure violations by the State interfered with his ability to present his defense. Specifically, Sewell alleges that he was prejudiced by the State's untimely disclosure of: (1) two pages of the Federal Reports; (2) Detective Kelly's notes; (3) two photos related to the State's firearm examination; and (4) Officer Stetzer's Police Report.

(12) In general, Superior Court Criminal Rule 16 controls what the State is required to disclose to a defendant.[13] A defendant is also "entitled to statements of government witnesses made to governmental agents if the contents thereof relate to the subject matter of the direct examination."[14] The State must also disclose evidence relating to the credibility of its witnesses.[15] "[A] conviction[] will be set aside only if the violation prejudices the defendant[]."[16]

(13) Sewell's second claim is misplaced. First, there was no disclosure violation regarding the Federal Reports and Detective Kelly's notes. The State only has the obligation to turn evidence over that is in its control. Here, the State produced the additional pages of the Federal Reports, once those pages were under its control. Further, the State had no obligation to disclose its witness. As to Detective Kelly's

---

[13] Super. Ct. Crim. R. 16.

[14] *Hooks v. State*, 416 A.2d 189, 200 (Del. 1980).

[15] *Jackson v. State*, 770 A.2d 506, 515 (Del. 2001).

[16] *Skinner v. State*, 575 A.2d 1108, 1126 (Del. 1990).

5

notes, the State provided those notes before Sewell cross-examined the witness as required. Further, the notes were immaterial as Sewell already had the information which the notes contained. Therefore, there was no violation in regards to the Federal Reports, the State's witness, or Detective Kelly's notes.

(14) Second, the State's failure to produce two photos related to the State's firearms expert report is immaterial. This was conceded by Sewell's counsel in a letter to the trial court, dated April 8, 2014, which stated there was no longer a need for a firearms expert witness. Therefore, the photos were immaterial by Sewell's own admission, and he could not have been prejudiced by the untimely disclosure.

(15) Last, Sewell was not prejudiced by the untimely disclosure of Officer Stetzer's police report. It is true that the testimony related to the traffic stop where Sewell was apprehended may have created an inference that Sewell attempted to run. But when compared to the substantial evidence presented by the State, there is no reason to believe that the jury convicted Sewell based on a mere inference. Because we have determined that the alleged disclosure claims were either not violations or immaterial, Sewell's cumulative prejudice argument is moot.

(16) Third, Sewell claims that he was prejudiced by the State's failure to file a motion to declare him an habitual offender before the final case review.

(17) "Any person who has been 3 times convicted of a felony, . . . and who

6

shall thereafter be convicted of a subsequent felony of this State is declared to be an habitual criminal . . . ."[17] Under 11 *Del. C.* § 4215(b), the State may move to have a defendant declared an habitual offender "at any time after conviction and before sentenc[ing] . . . ."[18]

(18) Here, as conceded by Sewell, the State moved to have him declared an habitual offender after Sewell was convicted and before he was sentenced. The State complied with the procedures set forth in Section 4215(b). It is also worth noting that Sewell was aware of his prior convictions and, consequently, had notice that the State may move to have him declared an habitual offender. Sewell cannot establish that he was prejudiced in anyway because the State followed proper procedures. Thus, Sewell's last claim has no merit.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED**.

BY THE COURT:

James T. Vaughn
Justice

---

[17] 11 *Del. C.* § 4214(a).
[18] 11 *Del. C.* § 4215(b).